1  GREATER BAKERSFIELD LEGAL ASSISTANCE, INC.
2      Mark A. Roy (SBN 255286)
       mroy@gbla.org
3      Erica L. Stephens (SBN 276944)
       estephens@gbla.org
4  615 California Ave.
5  Bakersfield, CA  93304
   Phone: (661) 334-4679
6  Fax:    (661) 325-4482

7  BRANCART & BRANCART
8      Christopher Brancart (SBN 128475)
       cbrancart@brancart.com
9      Elizabeth Brancart (SBN 122092)
       ebrancart@brancart.com
10 Post Office Box 686
11 Pescadero, CA  94060
   Phone: (650) 879-0141
12 Fax:    (650) 879-1103

13 Attorneys for Plaintiffs

14

15              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF CALIFORNIA
16

17 **LAREN SALISBURY and KIM DOWNEY,**        Case No.:
18              **Plaintiffs,**                **COMPLAINT FOR MONETARY,**
19                                             **DECLARATORY, AND INJUNCTIVE**
         **v.**                                **RELIEF**
20
21 **ARTHUR E. HICKMAN, individually and**
   **as trustee of the Hickman Family Trust**
22 **Dated 09-22-90; JAQUELINE D.**
   **HICKMAN, individually and as trustee of**
23 **the Hickman Family Trust Dated 09-22-90;**
   **JOSEPH TERMINI, individually and dba**
24 **CHARTER REALTY AND PROPERTY**
   **MANAGEMENT; and UMBERTO CRIMI,**
25
26              **Defendants.**
27
28 *///*

COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF

## I.  <u>INTRODUCTION</u>

1.      In this action, plaintiffs, female mobile home park residents, sue defendants, park owners and managers, for discrimination and harassment on the basis of sex in connection with the operation of the Arrowhead and Whispering Hills mobile home parks, located in Kern County, California, in violation of the federal Fair Housing Act and related state laws.

## II.  <u>JURISDICTION AND VENUE</u>

2.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine plaintiffs' state law claims because those claims are related to plaintiffs' federal law claims and arise out of a common nucleus of related facts.  Plaintiffs' state law claims form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper under 28 U.S.C. § 1391 in that the claims alleged herein arose within Kern County, California.

## III. <u>PARTIES</u>

4.      Since 2001, plaintiff Laren Salisbury, a woman, has resided in a mobile home space at Arrowhead Mobile Home Park, located in Ridgecrest, California.  Ms. Salisbury claims that during her residency, defendant Umberto Crimi sexually harassed her.  Accordingly, Ms. Salisbury is an aggrieved person within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(h) and the California Fair Employment and Housing Act, Government Code § 12927(g).

5.      Since 2007, plaintiff Kim Downey, a woman, has resided in a mobile home space at Whispering Hills Mobile Home Park, located in Rosamond California.  Ms. Downey claims that during her residency, Umberto Crimi sexually harassed her.  Accordingly, Ms. Downey is an

COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF

aggrieved person within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(h) and the California Fair Employment and Housing Act, Government Code § 12927(g).

6.     Defendant Arthur E. Hickman and defendant Jaqueline D. Hickman, husband and wife, are each a trustee of the Hickman Family Trust Dated 09-22-90 (Hickman Trust), which owns the Arrowhead Mobile Home Park (Arrowhead) and the Whispering Hills Mobile Home Park (Whispering Hills).  Between 1990 and 2008, Mr. Hickman and Mrs. Hickman owned the Whispering Hills in joint tenancy.

7.     Defendant Joseph Termini is the proprietor of Charter Realty and Property Management (Charter), which manages both Arrowhead and Whispering Hills, acting under the direction and for the benefit of the Hickman Trust.  He manages the affairs of Charter from its headquarters in San Clemente, California.

8.     Defendant Umberto Crimi, commonly known as Bert Crimi, is the agent of each other defendant, serving as their onsite park manager.  Between 2005 and February 2012, Mr. Crimi was the on-site manager at Whispering Hills.   Since March 2012, Mr. Crimi has served as the onsite manager of Arrowhead.

9.     Each defendant is the agent of the other, and each defendant was acting within the scope of his or her authority at the time the unlawful acts alleged herein were committed.

## IV.     FACTS

### A.  INTRODUCTION

10.     Defendants, acting through their agent, defendant Umberto Crimi, have committed the following discriminatory housing practices:

    a.   Creating a hostile living environment for female tenants because of sex;

    b.   Imposing different terms, conditions, or privileges, or denying or limiting services or facilities in connection with the rental of a dwelling, because of sex;

- 3 -
COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF

c.  Making statements indicating a limitation, preference, or discrimination, or the intent to discriminate, based on sex;

d.  Threatening, intimidating, or interfering with female tenants in their enjoyment of dwellings because of sex;

e.  Coercing female tenants, either orally or in writing, or by other means, to deny or limit the benefits provided those persons in connection with the rental of a dwelling because of sex;

f.  Engaging in unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature such that submission to the conduct, either explicitly or implicitly, was made a term or condition relating to the rental of a dwelling or the provision of benefits or services in connection therewith; and,

g.  Engaging in unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature such that the conduct had the effect of creating an environment which a reasonable person would consider intimidating, hostile, offensive, or otherwise making the tenancy significantly less desirable, in connection with the rental of a dwelling or the provision of benefits or services in connection therewith.

11.     In the alternative, each defendant was negligent in his or her ownership or operation of the Arrowhead and/or Whispering Hills mobile home parks.

### B.   KIM DOWNEY

12.     Kim Downey resides in a mobile home on space 24 of Whispering Hills Mobile Home Park in Rosamond, California.  Ms. Downey owns her mobile home and pays monthly rent for the

- 4 -

1   mobile home space.  Ms. Downey has lived at Whispering Hills since May 2007.  From the start of

2   her tenancy there until February 2012, Mr. Crimi was the on-site manager at Whispering Hills.

3       13.     Shortly after Ms. Downey moved into the park, Mr. Crimi began making sexual

4   comments about her physical appearance, stating that he was attracted to her.  For example, Ms.

5   Downey observed that when Mr. Crimi would drive through the mobile home park on his golf cart,

6   he would divert from his path of travel to approach and contact her.  His comments were, uniformly,

7

8   sexual in nature.  Mr. Crimi told Ms. Downey that he thought about her all the time, that she was

9   sexy, and that she had a nice body.  Mr. Crimi asked to kiss her and, on several occasions, stated he

10  wanted to make love to her, adding that if Ms.  Downey were "his woman – the things he would do to

11  her," or words to that effect.  Ms. Downey firmly rejected Mr. Crimi's advances, reminding him that

12  he was married.  In response to her protests, Mr. Crimi's typical reply was, "I know, I know.  I just

13

14  can't help myself."

15      14.     Mr. Crimi also came, without notice or invitation, to Ms. Downey's door, where he

16  made similar sexual advances and comments, such as, "You don't know what you do to me," and "If

17  you were my woman, I would just love you and make love to you."   On one occasion, Mr. Crimi

18  tried to push his way into Ms. Downey's home, causing her to press back against the door, stopping

19

20  Mr. Crimi's advance.  In response to each of these intrusions, Ms. Downey told Mr. Crimi to stop

21  harassing her and then closed the door on him.

22      15.     Ms. Downey found Mr. Crimi's comments and conduct offensive and unwelcomed,

23  and she made those feelings known to Mr. Crimi, telling him, "You're a married man.  You need to

24

25  stop" or words to that effect.   She tried to avoid him and altered her use of the park.

26      16.     During the course of her tenancy at Whispering Hills, Ms. Downey grew increasingly

27  fearful of Mr. Crimi and tried to avoid him whenever possible.  On at least one occasion, Ms.

28

COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF

Downey returned to home to find a light on and the door to her bedroom closet open, when she had not left them that way.  She feared that Mr. Crimi was entering her home when she was away from home.

## C.  LAREN SALISBURY

17.     Laren Salisbury resides in a mobile home on space 15 at Arrowhead Mobile Home Park in Ridgecrest, California.  Ms. Salisbury pays monthly rent for the mobile home space.  Ms. Salisbury has been a resident at Arrowhead for 11 years.

18.     In March 2012, Mr. Crimi contacted Ms. Salisbury at her home.  Not wanting him inside her home, Ms. Salisbury ushered him to her yard, sat on the back steps, and invited Mr. Crimi to have a seat in a nearby chair.  Instead, Mr. Crimi approached Ms. Salisbury and grabbed her hand and told her he had "urges" towards her, causing Ms. Salisbury to stand in surprise and back up the stairs.  Mr. Crimi followed Ms. Salisbury up the stairs until they were face to face.  Mr. Crimi asked if he could hold Ms. Salisbury in his arms.  Ms. Salisbury refused, stated that Mr. Crimi was married, and stated that he should talk about these things with his wife.

19.     Then, Ms. Salisbury's dogs barked at Mr. Crimi and he turned away, allowing Ms. Salisbury to slip around him and move toward the front of her home.  Mr. Crimi followed, asking if there was any way Ms. Salisbury would allow him to enter her home, saying, "It will only take ten minutes."  Ms. Salisbury told Mr. Crimi, "this is not going to happen," and Mr. Crimi then left.  That night Ms. Salisbury could not sleep.

20.     A few days later, Ms. Salisbury was alone in her home when Mr. Crimi entered her home without notice, knocking, or permission.  Ms. Salisbury was in her kitchen when she noticed Mr. Crimi standing behind her.  She exclaimed, "What are you doing in my house," or words to that effect.   As he stood in her kitchen, Mr. Crimi again asked Ms. Salisbury to let him hold her in his arms and kiss her.  He approached her, causing her to back up against the kitchen counter.  Mr. Crimi

1   repeated that he had urges for Ms. Salisbury.  The dogs barked at Mr. Crimi, diverting his attention,

2   allowing Ms. Salisbury to slip around him and exit her home.  Mr. Crimi followed.  Once outside,

3   Mr. Crimi sat in a chair at the front patio and resumed his advances.  Ms. Salisbury told him, "This is

4   not going to happen," reminded him that he was a married man, and told him that he should not treat

5   a resident this way.  Mr. Crimi responded, "It won't be long," or words to that effect, and left her

6   property.

7       21.     Ms. Salisbury found Mr. Crimi's comments and conduct offensive and unwelcome,

8   and she made those feelings known to him.  She tried to avoid him and altered her use of the park.

9   In March 2012, Ms. Salisbury reported Mr. Crimi to the Ridgecrest Police Department.  In April

10  2012, the Kern County Superior Court issued a permanent restraining order on her behalf against Mr.

11  Crimi.

### D. INJURIES

22.     By reason of defendants' unlawful acts or practices, Ms. Salisbury and Ms. Downey

have each suffered emotional distress, including humiliation, mental anguish, and attendant bodily

injury, violation of her civil rights, loss of dignity, embarrassment, and otherwise sustained injury.

Each of them has also suffered invasion to her private right of occupancy, depriving her of the full

use and enjoyment of her tenancy.  Accordingly, each plaintiff is entitled to compensatory damages.

23.     In doing the acts of which plaintiffs complain, defendants acted with reckless

disregard of the federally protected rights of plaintiffs.  Accordingly, each plaintiff is entitled to

punitive damages.

24.     There now exists an actual controversy between defendants and plaintiffs regarding

defendants' duties under federal and state fair housing laws.  Accordingly, each plaintiff is entitled to

declarative relief.

COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF

25.     Unless enjoined, defendants will continue to engage in the unlawful acts and in the pattern or practice of discrimination and harassment described above.  Plaintiffs have no adequate remedy at law.  Plaintiffs are now suffering and will continue to suffer irreparable injury from defendants' acts and their pattern or practice of discrimination against women unless relief is provided by this Court.  Accordingly, each plaintiff is entitled to injunctive relief.

## V.  CLAIMS

### A.  FIRST CLAIM
### *[Fair Housing Act]*

26.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

27.     Defendants injured each plaintiff by committing discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

### B.  SECOND CLAIM
### *[California Fair Employment and Housing Act]*

28.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

29.     Defendants injured each plaintiff by committing unlawful housing practices in violation of the California Fair Employment and Housing Act, California Government Code §§ 12927, 12955, *et seq.*

### C.  THIRD CLAIM
### *[California Unruh Civil Rights Act]*

30.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF

31.     Defendants injured each plaintiff in violation of the Unruh Civil Rights Act, California Civil Code §§ 51- 52 by discriminating against women in the operation of rental dwellings, a business establishment.

## D.  FOURTH CLAIM
### *[Negligence]*

32.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

33.     Defendants injured each plaintiff by want of ordinary care or skill in their management of their property, person, or agents in violation of California Civil Code § 1714.

## E.  FIFTH CLAIM
### *[Covenant of Quiet Use and Enjoyment]*

34.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

35.     Defendants injured each plaintiff by invading her private right of occupancy and infringing upon her right to the quiet use, enjoyment, and possession of her dwelling in violation of Civil Code §§ 1927 and 1940.2.

## F.  SIXTH CLAIM
### *[Unlawful Entry]*

36.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

37.     Defendants injured each plaintiff by unlawful entry or seeking unlawful entry of her dwelling in violation of Civil Code §§ 1940.2 and 1954.

## VI. RELIEF

WHEREFORE, plaintiffs pray for entry of a judgment against defendants that:

1.  Awards compensatory damages;

2.   Awards punitive damages;

3.   Awards statutory damages pursuant to the California Unruh Civil Rights Act and its companion provisions;

4.   Declares that defendants have violated the Fair Housing Act, the California Fair Employment and Housing Act, and the California Unruh Civil Rights Act;

5.   Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring defendants, their contractors, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants without regard to sex;

6.   Awards costs of suit, including reasonable attorneys' fees; and,

7.   Awards all such other relief as the Court deems just.

Dated: July 5, 2012.

Respectfully Submitted,

GREATER BAKERSFIELD LEGAL ASSISTANCE
BRANCART & BRANCART

/s/  Christopher Brancart
Attorneys for Plaintiffs

COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF